Court is now in session, and welcome. I think you all are familiar with video oral argument, and I want to be sure, though, that you understand that you are not to take any videos yourself or any pictures of this. As well, you should keep yourself muted except when you're speaking. Please unmute you so we can hear you. Please recall that when you are referring to the record, we appreciate a record site, and recall that rebuttal is for rebuttal only. Note that Ms. Engelhardt is here, and you can see the clock, and that clock still applies even though we're Zooming. We're still under time. So with that, we will begin with Case Number 20-50966, Zurich American Insurance Company v. Arch Insurance Company, and we'll begin with Mr. Morales. Good morning, Your Honors. Romero Morales, Counsel for Appellant, Zurich American Insurance Company. The issue before the Court today is whether Arch Insurance Company owes a duty to defend its additional insured Central Texas Highway Constructors, or refer to them throughout as a CTHC. The Central Texas Highway Constructors was sued for a series of construction defects related to State Highway 130 in Texas, and as part of that construction, Central Texas Highway Constructors hired a subcontractor, Archer Western Insurance Company. That subcontract required Archer Western to procure insurance for liability arising out of Archer Western's work. Archer Western did so by procuring insurance through Arch Insurance Company, the appellant. The underlying case then proceeded to an arbitration, and the CTHC tendered the claim to Arch. Arch denied the claim. So we have three issues to address here before the Court. We are dealing with whether or not there is property damage caused by an occurrence, and whether or not the additional insured obligations will attach with regard to the claims asserted in the underlying arbitration. I'd like to step through it in that order because we are dealing with only the coverage grant of the policy. Arch is not asserting any exclusions apply. So if we step through the coverage grant, it will address all of the issues that are germane to the litigation. So with regard to whether or not there is property damage caused by an occurrence, Arch has asserted that in their reply papers, excuse me, their opposition, that there is no occurrence as required by Illinois law because under Illinois law, there has to be some damage to something other than the project. The primary cases that address that in Illinois are a case called Westfield, Bazzi, and J.P. Larson. Each of those cases state that the operative analysis for whether or not there is an occurrence is whether there is damage to something other than Archer Western's work, not whether there's project. And the way the courts have addressed that, they look at the scope of the contract, and in the scope of the contract, they address, okay, is there a damage? Is there something damage asserted outside of the work of the subcontractor? Here there is with regard to the work of Archer Western. Archer Western was responsible for portions of concrete on bridges as well as drainage related to bridges. And if you record site 3257 refers to damage to other than the bridges, it refers to damage to the riprap, damage to shear pads. And so with regard to the standard set forth by the Illinois courts in Westfield, Bazzi, J.P. Larson, and actually just 19 months ago in a case called Metropolitan, there would be an occurrence here. Seems like the argument though that Arch is really relying on is that you can't just take, you know, thousands of pages and find one word in all of those pages and claim that that's the basis for the duty to defend. That while the duty to defend can be broader than the duty to indemnify and doesn't have to be based on, you know, the main arguments, etc., the main assertions, there still needs to be something more than cherry-picking a word or two here or there. How do you address that? Yes, Your Honor. I'll address it first with Illinois Supreme Court authority. Illinois Supreme Court states that the duty to defend applies if there is any potential. It states that if only one claim of many fall within the ambit of coverage, there is a duty to defend. It states that the complaint and the policy must be liberally construed in favor of defense. It states that any ambiguities, any doubts must be resolved in favor of a defense. That's the Illinois Supreme Court. Isn't it also a reasonable reading? Because, I mean, you almost always could say it's possible, X, Y, Z. I mean, since Archer Western was there, it's possible they could have caused some harm. But I don't think that's enough, even under the liberal construction and so on and so forth, which doesn't seem that different from Texas law over in Illinois. Well, let me just cite to the record, and with regard to the comments about whether there's cherry-picking, I guess I would respond just initially that I believe that the duty to defend, if there is a cherry, there's a duty to defend. I mean, is incorrect legally. But if you want to refer to the actual record, I refer you to the arbitration record with the request for arbitration at paragraph 57, record on appeal 32 to 81, specifically states, and I quote, the developer provided CTHC record of defects, okay? It's provided with regard to defects, including reports and photos. Those reports and photos are incorporated into the request for arbitration. And those reports and photos say specifically, SE abutments due to erosion caused by drainage, caused by drainage outlet. That's record on appeal 1617 and 7524. So that is a specific reference to damage caused by Archer Western's work. Whether that's viewed as being searched for, I think that's what we do in the duty to defend. We search the record for a duty to defend. That the developer presented its claim by dumping a bunch of information into a file, that the loss is, that's, you know, you take the pleadings as you get them. We don't necessarily, would we have preferred that they give us something more precise? No, but they give you 4,000 pages as part of their demand for arbitration. You have to go through it. And so there's another reference record on appeal 1626. They say the same thing again. This is a different location. Erosion due to deck drainage outlet has caused a deep void in the rip, riprap and abutment cap. Again, under the Illinois rules that you interpret these, these allegations in favor of coverage, that any doubts are in favor of coverage, our, our view is that's enough right there. But even, even if that were not enough, then you have the, the, you go on in the arbitration, in the demand for arbitration. And it says that Archer's contention has been, this is only a soils case. Well, specific allegations, the project wide defect, that's the soils issue. It's not the only design defect. That is also in the record. So you, you have these allegations. They have, they have another section in their request for arbitration where they refer specifically to other defects and deficiencies. So if we're applying the duty to defend standard, that's, that's what you need. And again, you could refer to it as cherry picking, but if there's something there, the insured is entitled to defense. It's not, it's the fact that they could say, well, here, here, the majority of the case is not a, does not have drainage issues. Doesn't excuse a defense duty. So if, when you run through that, that's, that is, that is the factual issue. Now there is there is a legal issue dealing with Archer's contention. And that is what is the standard that you're applying to determine if in fact there is an obligation. And by that, I mean, are you applying an arising out of standard? Or are you applying a cause by and whole or in part standard? So the policy that Arch issued has what's referred to as a owner's contractors, less or form B additional insured endorsement. That endorsement provides coverage for liability arising out of the work of Archer Western. It doesn't require fault. It just requires any causal connection, no matter, no matter how slight the, the, the Illinois court. And I believe the Texas courts are the same arising out of growing out of any causal connection to the work of the named insured. So you have that endorsement. Arch has asserted that endorsement doesn't apply. We assert that that endorsement does apply because it is specifically referred to in the contract. It is attached as, as an exhibit to the contract. And it's, and the contract itself says failure to procure the insurance required herein is considered a material breach. And you have the Dora case out of the Illinois Supreme court saying that you interpret insurance contracts with regard to the context in which they were, they were negotiated. And here it's clear. The intent was to get this, this specific endorsement under that endorsement. You don't even need them to allege causation in order to, in order for there to be an obligation. But then even if you apply the arch endorsement, the one arch wants to apply, which is refers to cause by and whole or in part, there are two issues there, both of which there would still be a defense duty under the cause by and whole or in part obligation. If in fact there is no difference. And there's one case in Illinois that says there is no difference between a rising out of and caused by, and that, that situation, we'd have the same argument as we just did with the rising out of, but if it requires something more, something like proximate cause, again, I'll refer you to the record where there are exact specific allegations of causation. There is a record 16, 16, 17, 16, 24. They refer to erosion caused by deck drainage at record 3282 to 3292. They refer to contraction of expansive soil, as well as erosion caused by poor drainage. I also refer you to issues with arches concrete work, which the court referred to the concrete issue as saying, well, the, the report refers to poor concrete quality and arch did not arch poured concrete did not. And they said poor quality is not the same as pouring concrete. Again, I refer you to the Illinois Supreme court decisions where say any ambiguities in, in the record, Aaron in favor of providing a defense. So if you have poor concrete quality and arch is responsible for pouring concrete, that poor quality can be from a number of issues. And that issue again, is enough to trigger a defense duty. I'll refer you to the tool works case out of Illinois, which specifically says we are guided by the well-settled principles followed by the Illinois courts that vague ambiguous allegations should be resolved in favor of providing a defense. So when you, when you run through the Illinois law, what we're required to follow and you run through these specific allegations, there's enough here for a duty to defend. We're not here presenting to the court that this is the primary issue in the litigation or that this is the driving issue. There is litigation among all the parties presently pending to figure out who is responsible for what, but, but the, that there is damage alleged related to Archer Western's work. It's undisputed in the record. There are, there are a number of references to it that it's not enough is not how an insurer is supposed to assess its defense duty. And in fact, it's supposed to look for coverage, not sit here and say, Oh, I think that that allegation conflicts with that allegation. So I'll go with the one that eliminates coverage. There's authority directly on point. The Dems case says conflicting allegations. There's still a defense duty. So when you run through the law and you run through the facts are not, are not massive. I give you that. I understand that, but there is enough here for a duty to defend. Again, there are references to deck drainage cause causing erosion. There are references to poor, poor quality concrete. They poured the concrete. That's a vague term, but what does it mean? It's again, I'm following the law. You, you, you err on the side of a defense duty. The other issue that raised and I want to make sure I address it is whether there is damage during the policy periods. They raised this Demer issue. I view it as somewhat of a non-issue arch issued insurance throughout the entire period. We are dealing. I didn't really understand that because typically these period issues are because there's several different insurance companies that could cover the time period, but here it's all the same one, right? Yes, Your Honor. I didn't say there's a I think for some of the years they refer to a Demer clause, but when you're dealing, when you're dealing, in other words, all damage is deemed to occur when it first happens, that doesn't impact whether there's a potential that damage happened during an arch policy, specifically when they cover the entire exposure period. So we view it as a, as a non-issue. There's the Frankenmuth decision, which specifically says if a pleading is silent about when damage occurs, there is a potential. Again, staying on the theme that Illinois courts lean heavily, heavily in favor of a defense. The case escapes me, but one says the deck is stacked and the standard is low. And so you must unequivocally, you must unequivocally establish that there is no potential for coverage. We've, we've cited to the record, we cite to it in our papers. I've cited it to you now. There is, there is sufficient information here. It may not be a defense duty. And I do, I would like to call your attention to paragraph 25 of the expert report. That is our, that's record on appeal 3596, 3597. And this is a direct quote, poor drainage has proven to be a major cause of erosion. That's enough. Again, each, each of these phrases, I get that they're contextual. I get that there are competing arguments, but again, conflicting arguments, you did not eliminate a duty to defend vague allegations. You did not eliminate a duty to defend. It must be absolutely clear. And the fact that there are in fact, allegations is sufficient. I'll also reference that the magistrate acknowledged there were defects. So the con the suggestion that there's nothing here is just wrong. Okay. You've used your time. Thank you. You reserved time for rebuttal. We appreciate that. And we'll now hear from Mr. Dove. May it please the court, Chris Dove on behalf of arch insurance company. I think this court should begin with the standard. It's certainly what we've been discussing all morning, uh, where I think I disagree with Mr. Morales. His approach is that he wants to begin by assuming that his client is an additional insured, uh, and then move on from there. The problem he's got is that in order for, uh, CTHC to be an additional insured under arches policy to begin with, he's got to satisfy this test. The magistrate judge accurately identified what the standard is that this court will apply. Does the developer allege that our Westerns work caused damage to anything other than Archer Westerns work? That's what it's got to satisfy. Uh, and on these facts, we believe you could state the standard even more clearly. Um, does developer allege that Archer Westerns work caused any damage at all? The magistrate was correct to add the additional exception to it, but these facts don't even get into that, but it doesn't require that they use the phrase Archer Western, right? I mean, that is absolutely right. Had they said, for instance, whoever built these bridges did a the construction of the bridges. Okay, so, so your argument is not that they had to name Archer Western, but rather that they had to name Archer Westerns work that affected something other than their actual work. Isn't that what Mr. Morales just spent the last 15 minutes arguing? Absolutely not. Okay, here's why I say that. Mr. Morales, uh, I thought it was very amusing that we're talking about, well, aren't you cherry picking? And he says, well, if I can find a cherry, that's enough. Why isn't that enough? If there is a cherry in the field of corn, then why isn't that enough? I think I would say it this way, because if you look at it from that sense, if you can go into the field and find a cherry, then yes, that's what the standard says. Another side of this that's very important that the magistrate's ruling talks about is, however, it is not enough to say there might have been a pleading about a cherry. I can imagine a world in which these pleadings would have a cherry, and that is fatal to his claim because these pleadings don't have a cherry. At most, what about this drainage argument? Here's why. When you look at the actual allegations of causation, the developer's statement of claim, which Zurich doesn't want to talk about, even though it confesses that they have to take it into account. In the developer's statement of claim, it is absolutely clear. We adopt the opinion of Dr. Ali Abomali as our opinion as to causation. Dr. Abomali finds only causation by the soil preparation by CTHC. He does not allege any causation from archer western work. They have tried to take some words from the middle of the paragraph talking about his opinion, saying, well, there's some reference to drainage here. There's some reference to concrete voids, and so that's enough. That is not enough. When the paragraph begins with the statement, CTHC is the only cause of the damage. When you look at his report that's incorporated by reference, Dr. Abomali makes that as crystal clear as he can. The only cause he attributes, the cause of the drainage, the cause of the voids, the cause of the movement, the cracking, everything he explicitly attributes only to CTHC soil preparation. That is something they cannot get around. They have no answer for it, and that's why Mr. Morales didn't want to talk about it in his opening. He wants to talk about the prior document, the first one that was filed, the request for arbitration. The request for arbitration says the cause of the damage at the facility, meaning the road that's being built, is upper soil preparation. Flatly, plainly says it, unambiguously, no exceptions. Look at paragraph 292. I think that's in the statement of claim. Correct. And the second paragraph starts, the abutment movements caused by differential soil movement attributable to the swelling and contraction of expansive soil, as well as soil erosion caused by poor drainage, have been called all these problems. Yes, Judge Davis, and Dr. Abomali's report flatly says that the cause of the drainage was improper soil preparation. I'm looking at this paragraph here, which is part of the statement of claim. And Dr. Abomali's report is incorporated by reference also. Certainly, Zurich is not pretending that you can ignore Dr. Abomali's report, because it's trying- But if there's ambiguity because of one paragraph versus another, then that would- I know you don't think there's an ambiguity, but if there is, then that supports a duty to defend, right? I would say it this way, because I think I almost agree with you, but the almost is so important here that I think it has to be said. If you look at all of the documents that you must consider and you still find an ambiguity, then yes, that would support Zurich's position. But you must look at all the documents. I don't believe that this one statement in paragraph 292 is ambiguous, because the paragraph begins, as explained in Dr. Abomali's report, these issues are attributable to movement of the abutments due to improper soil preparation at the bridges, including the presence of untreated expansive soil. This is the thesis of the In Texas, there's a lot of problematic building of buildings on difficult soil, but that doesn't mean that the difficult soil always is a problem. It's when you have a lot of rain and then you have a drought and so on, and the soil is moving back and forth. So too, if you don't have appropriate drainage to deal with a lot of rain or appropriate sprinklers to deal with drought, then you'll have this problem. So it can be both. In other words, you can have bad soil, but you can also try to, in fact, you couldn't live in Texas if you didn't try to address bad soil, pretty much. So to me, there's a mix of that. You could, in fact, build your house on bad soil, but have really good drainage, really good sprinklers, really this and that, and probably be just fine. And so why couldn't that be both? You should have put in better soil, but you also should have done a better job of the sprinklers and drainage. I realize I'm making a bit of a hypo, a bit of an analogy that's not exactly the same, but it's just something I more can relate to. I appreciate that, and this is precisely why we briefed the very important clarification that Illinois law also says you do not add allegations that don't exist in the pleadings. What you've described is a world in which, imagine, the developer says, and there are these drainage problems that were caused by Archer Western's work, and they don't have to name Archer Western. I appreciate that. They could say, because of the construction of the bridges, and the only allegation that Zurich has come up with about Archer Western's drainage, why it might matter, is that they were supposed to install PVC downspouts when they built the bridge, and that drainage might involve them disinstalling the downspout. Let me ask you about this. In this circumstance, I'm sorry, Judge Davis, were you speaking? Paragraph five of the doctor's report causes a failure. It's paragraph 30, and it's a subpart A, and the last sentence starts, poor drainage can result in surface erosion, slope stability failures, increases in hydrostatic pressures, and pumping of fine aggregates. Water seeping at the back wall is an indication that water intrusion has caused the soil erosion at different components. And then water intrusion due to failure to properly design the applicable drainage systems, and due to voids resulting from expansive soil movement, has caused soil erosion and differential settlement of different abutment components. Doesn't that tie in the design of drainage to the causation? There are two answers to that, Judge Davis. First of all, if you look at the beginning, if you look at chapter, I'm sorry, paragraph 30 of Dr. Abamali's report, paragraph 30 ends with, my opinion is that improper soil preparation has caused the failures observed, including heating at the approach slab, as well as the erosion and drainage problems described below. Everything below he attributes to improper soil preparation. And then when you get to his specific allegations about drainage, and this was what I was trying to bring up with Judge Haynes, the allegations are not pertaining to anything that Archer Western did in its work relating to drainage. So this is where I almost agreed with you. I certainly agree that drainage is a huge problem in Texas. My house flooded in Harvey. I understand it. I live in Houston. The streets flood on the regular. They don't flood because of anything that Archer Western did. You're not going to sue Archer Western for your house. Exactly. Good for you. Drainage is caused by the failure to prepare the dirt so that the water runs off where it ought to run off. It none of that has to do with Archer Western's work, which was basically to come in and install parts of a bridge. They're not even providing the materials. They don't provide the concrete or the reinforcing metal. They show up, they put up the columns, they lay out the supports, they lay out the decks, they pour the concrete that's been provided to them. And that's their job. I thought I saw in the scope of work paragraph something about Archer having the obligation to design and install proper drainage around the bridges that they were responsible for. They are supposed to deal with this downspout problem. They're supposed to manage it. Nothing, though, in any of the actual allegations that are made by developer say that Archer Western's design of any drainage was the cause of any harm to anything anywhere. And that's why we think that this is a relatively simple case. When you look at this, there's no cherry. There's to strain the analogy to the breaking point. There's maybe a tree, but there's no allegation that it's a cherry tree, much less that there is a cherry on it. And what you would have to do in order to bring this within the cases that Mr. Morales wants to talk about at such length, is you would have to find some specific allegation to even get to the point where you ask, is it ambiguous? Another document that he likes to talk about at length is the bridge damage inspection report. Again, let's just ground ourselves in what he's talking about, because this is what he spent most of his time in his opening argument talking about. We have a request for arbitration that has a footnote that says, by way of explaining, we gave notice as required by the contract. See, we sent this letter. It says, and the letter had a link to a share file site. The share file site is different. Here's the link. If you go to that link, you will find many hundreds of pages of documents. The magistrate read them all. He said he did, and I take him at his word. And we're not hiding from them. We're not saying you don't look at them. But we are saying that when you go look through these hundreds of pages, what you're going to find is only what Mr. Morales found, a bridge inspection report. And what it says is, this appears to be caused by soil movement. It then identifies that there is rotation, and then there is a drainage problem. It does not attribute causation to the construction of the bridge. It does not attribute causation to anything other than to say there's soil movement, and that further investigation will be needed. That's exactly what then the developer says in the request for arbitration. The request for arbitration says, CTHC did a terrible job of handling the soil here, and when it comes to these bridges, we're going to do further inspections and investigations. That's the allegation. What the magistrate recognized correctly is that even though I'm going to go and I'm going to look at these documents that were attached, I'm going to draw the important and necessary distinction that though they were attached, they're not part of the causation allegations being made by the developer. They're in there, but they don't form a causation allegation. So they can't ever tie together the standard that they need to even get off the ground. To reiterate, the standard has got to be, did the developer allege that Archer Western's work caused damage to anything other than Archer Western's work? When you go looking for any evidence of that, such that CTHC can even be an additional insured, such that you look at the threshold question, and when you go looking for that, what you find is repeated statements. The cause was CTHC. CTHC caused all of the following, and then below that, he will say, well, there's something here about drainage, and ignore the fact that the express statement, what the developer chose to say, which is what matters under Illinois law, is that this was caused by CTHC. They have also raised another point that I feel that I should address in the time remaining. There's this difference they want to raise between the phrase arising out of and cause in whole or in part by. This court doesn't even have to address that in order to draft its opinion. And the reason is because everybody agrees until Mr. Morales this morning, inexplicably, his own brief repeatedly asserts, Illinois law states that arising out of means but-for causation. It may or may not be that caused in whole or in part by is more restrictive. You don't even have to go to that because they cannot meet the lenient standard of arising out of. That requires but-for causation and express pleading that Archer Western's work was the but-for cause of damage to something other than Archer Western's work, and they can't find it. But if you were to want to go there, they still can't do it because that arising out of language is only added to the policy if it is identified by this exact form and edition date. Unambiguously, the subcontract does not identify it by this form and edition date. They want to say, I really wish that what they had said was it must identify the same words or the same risk or the same concept, but that's not the way it was drafted. That would open the door to tremendous claims of ambiguity and difficulty in the future. They said it has to be identified this way, and it wasn't. They also have tried to make a point about maybe there should be a distinction by amending exclusion L between negligent and non-negligent work done by Archer Western. Their problem there is they don't identify any allegation that would raise that distinction, and they waived it. They never made this argument at any point in the trial court, so we're not even going to go there. What we end up with, then, is a clear standard. Beg your pardon, Judge Oldham. I'm sorry. What we have, then, is the magistrate clearly identified the correct standard, cited the correct Illinois law defending that standard, rigorously examined the record. He did not disregard anything. He did not identify any work that caused damage that didn't matter. He went through and rigorously pointed out. Every one of these things that Zurich identifies, again, to strain the metaphor to the breaking point, isn't a cherry. What they keep pointing to are things that, at best, you could dream up a world in which they could have alleged that it was Archer Western's work that caused it, but they never do. The only way they can get there is by deleting words of restriction. CTHC was the cause of all of the following, boom, boom, boom, boom, including the thing that they want to say. Nothing about the cases allows this court, then, to delete allegations, to ignore expressed words of restriction in the allegations, or to dream up a world in which that allegation might have been made. Having made that point, I have a minute left. If the court has questions, I'm certainly happy to answer them. We appreciate your argument. Thank you very much. Thank you. All right. We will now hear from Mr. Morales' rebuttal. You need to unmute. There you go. You're unmuted now. Oh, what? No. There you go. Now you are. Initially, Mr. Dove makes much of the standard with it should be applied. Let me just read from the underlying court's order, because it's not clear whether he applied the arising out of or the caused by in whole or in part standard. I believe he applied the caused by in whole in part standard, but he never actually addressed it. But where he addresses legal standard, he says, the ARCH policies insuring agreements only provide coverage to an insured, named or additional, with respect to liability arising out of property damage caused by an occurrence. That's a record on appeal 2854. So when we read that, it looks like he applies the arising out of endorsement, but then he switches over to causation in the remainder of his analysis. So it's not clear which endorsement he applied. I submit to you that this court will have to address which endorsement applies. We believe that under either one, it's met. But the more lenient standard is clearly the arising out of. Mr. Dove refers to it as but So my view, I analogize in this way because we are dealing with a road, and that is that arising out of is a straight, flat road, and caused by is a minor speed bump. But both are met here. It's not as though the court doesn't address, doesn't assess facts that address that. With regard to Mr. Dove's comment that this is CTHC and solely CTHC, I would refer you to record on appeal 3260-61 and 3440, where the developer expressly explains that CTHC is responsible for everybody's work. That's why they reference CTHC. They are the general contractor. They are the only party in the litigation. The suggestion that this is only about CTHC is a fallacy. It is about a number of trades. They reference some trades as an example. In the reference I just referred you to, there are paragraphs 14 of the request for arbitration and paragraph 29 of the statement of claim. They say, for example, here are some issues. But in that same paragraph, they refer to CTHC being responsible for everything. Okay, let me ask you this. We've heard a lot about this cornfield with possibly there being a cherry in it. If you just had to summarize, you were on the elevator telling someone about your argument. You had to summarize what is your best argument that there is something that gives rise to the duty to defend. Okay, I'll refer you to paragraph 58 of the request for arbitration, which says they provided information to the developer regarding defects, including reports. Including reports. Those are the reports that Mr. Dove wants to ignore. Those reports say there is erosion caused by deck drainage in two different reports. Then I would refer you to the statement of claim, which refers to the above contraction of expansive soil caused by erosion as well as poor drainage. I will refer you to paragraph 25 of Dr. Abomaly's report, where he says poor drainage has proven to be a major cause of erosion. I will refer you to record on appeal, paragraph 3614, where Dr. Abomaly says poor concrete mixing and concrete quality are causes of rusted rebar. Concrete quality is a vague term. Under Illinois law, vagueness and ambiguity is interpreted in favor of coverage. What ARCH wants to do is flip the standard. They say if it's vague or conflicting, they don't owe an obligation. That's not the law. Okay. Well, thank you very much. We appreciate both sides' arguments. This case is now under submission. This concludes this panel's oral arguments for the week. Thank you very much. I'd ask the Deputy Clerk to excuse the lawyers from the courtroom. Thank you, Your Honor.